IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DENISE RODRIGUEZ-BENITEZ and LEO MILLAN, on their own behalf and on behalf of the conjugal partnership formed between them and as heirs of their children<br><br>    Plaintiffs<br><br>      vs.<br><br>DR. HECTOR BERRIOS-ECHEVARRIA, on his own behalf and on behalf of the conjugal partnership formed with his wife MIXIA JEASETTE MARTINEZ-RIVERA; CENTRO MEDICO DEL TURABO, INC. d/b/a HIMA SAN PABLO CAGUAS; GRUPO NEONATAL, CPS; DR. LISA WINCHESTER, on her own behalf and on behalf of the conjugal partnership formed with her husband JIM DOE; DR. BASILIA RIVERA; DR. MICHELLE VIZCARRONDO, on her own behalf and on behalf of the conjugal partnership formed with her husband MATT DOE; DR. TEA CALDERON; SIMED; PUERTO RICO MEDICAL DEFENSE; HIMA SAN PABLO CAPTIVE INSURANCE COMPANY LIMITED; COMPANIES A-Z; JOHN DOE; PATTY POE<br><br>    Defendants | CIVIL NO.<br><br>PLAINTIFFS REQUEST JURY TRIAL |

**COMPLAINT**

**TO THE HONORABLE COURT:**

    **COME NOW** Plaintiffs, through the undersigned legal representation, and very respectfully STATE, REQUEST AND PRAY:

<u>JURISDICTIONAL ALLEGATIONS</u>

    1.    This Honorable Court is vested with jurisdiction over the parties and the subject matter of this litigation under and pursuant to the diversity of citizenship statute (Section 1332 c) of Title 28 of the United States Code, 28 U.S.C. §1332), inasmuch as

there is complete diversity of citizenship between the Plaintiffs, as residents of the State of Texas and the defendants, residents of the Commonwealth of Puerto Rico, and the amount in controversy, exclusive of costs and interest, exceeds the amount of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00). As more specifically alleged below, all Defendants are domiciled and permanent citizens of Puerto Rico within the meaning of 28 U.S.C. §1332 and all Plaintiffs at the time of filing the complaint were domiciled and permanent citizens of a state of the United States of America other than Puerto Rico.

2.      Venue is proper in this Court pursuant to Section 1391 of Title 28 of the United States Code, 28 U.S.C. §1391, because the claims asserted arose in this judicial district.

3.      Plaintiffs demand a jury trial.

4.      All codefendants are jointly and severally responsible to Plaintiffs for the damages suffered by them.

5.      The instant case has been presented before the First Instant Court, Superior Court of Caguas, Commonwealth of Puerto Rico, civil case number E DP2013-0060, therefore the statute of limitations has been tolled.

## THE PARTIES

6.      Plaintiffs DENISE RODRIGUEZ-BENITEZ ("Denise") and LEO MILLAN ("Leo") are both of age, married and domiciled in 2800 W Hutchins Place #1120, San Antonio, Texas, 78224. They appear on their own behalf and on behalf of the conjugal partnership formed between them for their damages as well as the damages inherited by their twin sons, Nathan Millan-Rodriguez ("Baby 1") and Derek Millan-Rodriguez ("Baby 2"), upon their deaths.

2

7.	Co-defendant DR. HECTOR BERRIOS ECHEVARRIA ("Dr. Berrios") is a physician duly authorized in the Commonwealth of Puerto Rico with specialty in obstetrics and gynecology who provided medical services to Denise. He is married to Mixia Jeasette Martinez-Rivera, with whom he has a conjugal partnership. Dr. Berrios has a private office at Caguas, Puerto Rico and has HIMA Hospital San Pablo Caguas has extended privileges to him.

8.	Co-defendant CENTRO MEDICO DEL TURABO, INC. d/b/a HIMA SAN PABLO CAGUAS ("HIMA") is a legal entity or a commercial name of a private hospital in Caguas, Puerto Rico. HIMA is the juridical entity that is the owner, in whole or in part or is the manager and/or administrator and/or is the commercial or corporate name of a healthcare facility located in Caguas, Puerto Rico that offers services to the public. HIMA is also the employer or contractor of all other codefendants, for whom it is vicariously and jointly and several responsible. HIMA extended privileges to all codefendant doctors. At the time of the facts alleged in this complaint HIMA had in full force and effect an insurance policy extended by co-defendant HIMA SAN PABLO CAPTIVE INSURANCE COMPANY.

9.	Co-defendant GRUPO NEONATAL, CSP ("Grupo Neonatal") is a Puerto Rico corporation that at all times subject of this case was the contractor of some or all codefendant pediatricians and neonatologists that worked at HIMA neonatal care unit. Grupo Neonatal was granted by HIMA an exclusive contract to provide the neonatology services in the hospital. Plaintiffs did not choose Grupo Neonatal or co-defendant neonatal doctors as their neonatology services; they were chosen by HIMA.

10.	Co-defendant DR. LISA WINCHESTER ("Dr. Winchester") is a physician duly authorized in the Commonwealth of Puerto Rico with specialty in pediatrics and

neonatology. She is married to JIM DOE, with whom he has a conjugal partnership. Dr. Winchester is a neonatologist contracted by Grupo Neonatal that was afforded medical privileges at HIMA and that provided medical care to Baby 1 and Baby 2 upon birth and in the neonatal intensive care unit.

11.     Co-defendant DR. BASILISA RIVERA ("Dr. Rivera") is a physician duly authorized in the Commonwealth of Puerto Rico with specialty in pediatrics. Dr. Rivera is a pediatrician contracted by Grupo Neonatal.  Dr. Rivera is a pediatrician contracted by Grupo Neonatal. She was afforded medical privileges at HIMA and that provided medical care to Baby 1 and Baby 2 upon birth and in the neonatal intensive care unit.

12.     Co-defendant DR. MICHELLE VIZCARRONDO ("Dr. Vizcarrondo") is a physician duly authorized in the Commonwealth of Puerto Rico with specialty in neonatology. She is married to MATT DOE, with whom he has a conjugal partnership. Dr. Vizcarrondo is a neonatologist contracted by Grupo Neonatal.  She was afforded medical privileges at HIMA and provided medical care to Baby 1 and Baby 2 upon birth and in the neonatal intensive care unit.

13.     Co-defendant DR. TEA CALDERON ("Dr. Calderón") is a physician duly authorized in the Commonwealth of Puerto Rico with specialty in pediatrician. Dr. Calderon is a pediatrician contracted by Grupo Neonatal. She was afforded medical privileges at HIMA and that provided medical care to Baby 1 and Baby 2 upon birth and in the neonatal intensive care unit.

14.     Codefendant SINDICATO DE ASEGURADORES DE IMPERICIA MEDICA (hereinafter "SIMED") is an insurance company authorized to do business in Puerto Rico, which at the time of the facts alleged in this complaint had in full force and effect an insurance policy covering the damages alleged in this complaint and the

4

responsibility of all codefendant physicians. SIMED is deemed to reside in Puerto Rico within the meaning of 28 U.S.C. §1332.

15.   Co-defendant PUERTO RICO MEDICAL DEFENSE INSURANCE COMPANY (hereinafter "PR Medical Defense") is an insurance company authorized to do business in Puerto Rico, which at the time of the facts alleged in this complaint had in full force and effect an insurance policy governing the damages alleged in this complaint and the responsibility of co-defendant Grupo Neonatal. PR Medical Defense is deemed to reside in Puerto Rico within the meaning of 28 U.S.C. § 1332.

16.   Co-defendant HIMA SAN PABLO CAPTIVE INSURANCE COMPANY LIMITED (hereinafter "CAPTIVE") is an insurance company located at Tortola, British Virgin Islands, who at the time of the facts alleged in this complaint has in full force and effect an insurance policy extended to co-defendant HIMA, which covers the damages alleged in this complaint and the responsibility of co-defendants.

17.   COMPANIES A-Z are legal entities that at the times relevant to these facts owned, operated, managed, and/or administered, in whole or in part, and were solely or partially responsible for the administrative and medical issues of any of the codefendant's medical entities to provide all or part of the medical and/or administrative services. In the alternative, they are other legal entities that caused or contributed to causing the damages to plaintiffs. Also, and in the alternative, they are insurance companies which at the time the facts of this case took place had in full force and effect insurance policies in favor of codefendants.

18.   CODEFENDANTS JOHN DOE and PATTY POE are all codefendants of unknown identity that caused and contributed to causing plaintiffs damages. Their identities will be revealed once they are known through discovery.

5

19.     All of the named defendants are jointly and severally responsible to plaintiffs for the damages caused to them. All defendants fictitiously named herein, will be correctly named once their identities are determined.

## THE RELEVANT FACTS

20.     Plaintiff Denise, at 27 years old, became pregnant through artificial insemination.

21.     Denise trusted her prenatal care to OB/GYN Dr. Berrios on December 16, 2011, date in which she visited his office for the first time.

22.     According to the medical record, the estimated date of birth was on July 27, 2012. Denise was pregnant with twins.

23.     Denise had no complications during her pregnancy. All the tests and exams ordered by Dr. Berrios had normal results. The results for the Down syndrome and spine bifida were negative. The results for Hepatitis A, B and C and AIDS were negative.

24.     The April 23, 2012 sonogram reflected a biophysical profile score of 8/8 without alterations, showing that both babies were in excellent conditions. The cervix was found to be long and closed, which is normal.

25.     Denise went to her follow-up visits with Dr. Berrios, as ordered.

26.     On April 26, 2012, Denise went to Dr. Berrios' office for a routine visit. She had gained 26 pounds and she was in her 26-27 weeks of gestation. The heart rate, blood pressure and fetal movement were normal.

27.     On that same date, Dr. Berrios made a vaginal exam, in which he found effacement of the cervix of 50% and cervix dilatation of 1-2. Cervix effacement consists on the progressive shortening of the cervix, from a longitude of 2-3cm until its thickness

completely disappears. Cervix dilatation is when the cervix opens in order to allow the baby to pass. Dr. Berrios diagnosed that Denise was in the process of premature labor and ordered her hospitalization in order to administered medication to stop the labor ("tocolysis").

28.    Premature labor is a condition that needs to be corrected as soon as possible and occurs when the process of labor (uterine contractions, effacement and cervix dilatation) begins before the 37 weeks of gestation. If premature labor is not stopped on time, there is a risk that the baby will be born in an immature condition that puts its health and life at risk. A premature labor must be stopped before the dilatation reaches 3-4cm; once it reaches 3-4cm, labor is imminent and cannot be stopped.

29.    Denise was hospitalized on April 26, 2012 at HIMA Caguas for tocolysis. She was admitted with and order of Procardia 30mgs orally every 12 hours, Vistaryl, Celestone 12mg for lung maturation and intravenous Ampicillin 2mg.

30.    Denise was programed to be discharged on April 30, 2012, but that day she had an episode of moderate vaginal bleeding of red bright blood, for which her discharge was cancelled. An obstetric sonogram was performed.

31.    Nurses wrote down uterine contractions on the medical record during the whole admission, except for the dates of April 29, 2012 and April 30, 2012 at 7:00pm.

32.    Denise was discharged by Dr. Berrios on May 1, 2012 at 9:00am, even though nurses reported uterine contractions at 8:16am and 8:40am. There is evidence of these contractions on the fetal tracings of May 1, 2012. The findings of these contractions confirm that Denise continued to be in premature labor.

33.    Although Denise was in labor, she was sent to home to rest with instructions to take Procardia 30mgs orally every 12 hours and Vistaryl 50mg.

34.    On May 4, 2012, at 28 weeks of gestation, Denise went to Dr. Berrios' office as ordered. The vaginal exam showed she had a cervix dilatation of 3-4cm and cervix effacement of 80%. With that dilatation and effacement, it was too late.

35.    On that same date, Denise was admitted at HIMA Caguas at 5:30pm for tocolysis. According to the fetal tracing on the medical record at Dr. Berrios' office, Denise had contractions every 3-4 minutes, which is "premature labor".

36.    On May 4, 2012 at 6:30pm, Denise was administered intravenously 2mgs of Magnesium Sulfate. At 10:00pm, Denise had 6cm of dilatation and 80% of effacement. Dr. Berrios was notified and he ordered a C-section due to the "malpresentation" of the babies. The C-section was done at 11:00pm of that same date.

37.    Twin babies, Baby 1 and Baby 2 were born on May 4, 2012.

38.    Baby 1 was born premature according to his gestational age weighting at 2 pounds with 2.5 ounces and 15.5 inches long. There is no evidence that Survanta (a medication that helps the baby's lungs be more mature) was administered at the time of birth. According to the medical record, the baby presented occasional moans, weak reflexes and extremely low weight at the time of birth. Baby 1 was transferred to NICU. He was diagnosed with hyaline membrane (respiratory insufficiency due to prematurity), extremely low weight at birth, patency of the ductus arteriosus, pulmonary hypertension, anemia, indirect hyperbilirubinemia, pulmonary emphysema, intra-alveolar hemorrhage, all conditions caused and secondary to his prematurity. Baby 1 was on mechanical ventilation, had 5 tubes inserted in his thorax and received blood transfusions. After 21 days at NICU, Baby 1 passed away on May 22, 2012.

39.    Baby 2 was born premature according to his gestational age weighting at 2 pounds with 9 ounces and 15.5 inches long. There is no evidence that Survanta was

administered at the time of birth. According to the medical record, the baby presented occasional moans, weak reflexes and extremely low weight at the time of birth. Baby 1 was transferred to NICU. Baby 2 was diagnosed with respiratory distress syndrome, hyaline membrane, persistent pulmonary hypertension, all conditions caused and secondary to his prematurity. After 6 days at NICU, Baby 2 passed away on May 7, 2012.

<u>FIRST CAUSE OF ACTION: NEGLIGENCE</u>

40. The proximate and only cause of death of Baby 1 and Baby 2 and of all the damages to Plaintiffs was the combined negligence of all co-defendants. Specifically, co-defendants failed to provide the correct medical treatment to the patients and incur in medical malpractice by providing medical treatment below the standards stablished by the medical community in these types of cases.

41. The negligent acts and omissions of co-defendant Dr. Berrios are the following:

a. He failed to provide Denise adequate tocolysis while she was hospitalized at HIMA and when discharging her. Dr. Berrios ordered 30mg of Procardia every 12 hours when the appropriate doses should have been 20mg every 4-6 hours. No other prescriptions for tocolysis were administered to Denise on her first hospitalization. Dr. Berrios failed to order the correct and adequate tocolysis.

b. Inconceivably, Denise was discharged from HIMA on May 1, 2012 while she was in labor. Dr. Berrios incorrectly discharged Denise even though she was having moderate contractions at the moment; she was in

9

the process of premature labor. A pregnant patient with premature contractions is considered in premature labor. Pregnant patients in premature labor cannot be discharged from the hospital. There is proof of contractions on the nurses' notes and tracings. Discharging Denise while she was in premature labor is a gross deviation from the medical standards.

c.      Dr. Berrios' should not have discharge Denise from the hospital on May 1, 2012, especially when she had already suffered an episode of premature labor, she was still under premature labor, was pregnant with twins due to in-vitro fertilization and had had an episode of vaginal bleeding the day before. Denise should have remained hospitalized and given repeat course of steroids, additional tocolysis treatment with Nifedipine and magnesium sulfate.

d.      The prescription for the tocolysis medication given to Denise when she was discharged was inadequate. Supposing that there were no uterine contractions when discharged, she should have been given a prescription for 20mg of Procardia orally every 4-6 hours and not 30mgs every 12 hours. Not having prescribed tocolysis correctly when Denise was discharged is a deviation of the medical standards.

e.      On the admission of May 4, 2012, Denise was only administered 2mg of Magnesium Sulfate intravenously, which was incorrect and inadequate. Supposing that the magnesium sulfate was for the neuroprotection of the babies, the doses should have been no less that 4mg with 2mg by vein every hour. Co-defendants deviated from the

medical standard when they failed to adequately administer the magnesium sulfate for the neuroprotection.

f.      If Dr. Berrios would have provided tocolysis in an opportune and adequate manner and would not have incorrectly discharged Denise from the hospital, the pregnancy would have been allowed to continue and the babies would have been allowed to mature in the uterus. The deviations from the medical standards by Dr. Berrios are the immediate cause of death of the babies. If these deviations would not have happened, the babies would not have died.

g.      Management of preterm labor of a very high risk pregnancy like Denise's was substandard and the opportunity to further extend the pregnancy was lost.

h.      Inadequate antenatal steroid therapy resulted in the babies remaining at risk for and developing several RDS/HMD and IVH. Nursing and physician negligence both contributed to the failure to administer the second dose of B-methasone.

i.      Dr. Berrio's failed to take steps to prolong the gestational age of the babies.

j.      As a result of these deviations, premature labor advanced and the babies were born prematurely. The conditions caused by their prematurity caused their deaths.

42.    The negligent acts and omissions of co-defendant HIMA and co-defendant neonatologists and pediatricians are the following:

a.     HIMA inadequately extended medical privileges to Dr. Berrios; therefore the hospital is direct, joint and severally responsible for his negligent acts and omissions. HIMA failed to make sure that Dr. Berrios was qualified as OB-Gyn or that he had the necessary continued education. Also, HIMA extended medical privileges without doing a revision of Dr. Berrios' qualifications and when there have been repeated instances of medical malpractice indicative of professional incompetence.

b.     HIMA is vicariously, directly, jointly and severally responsible for the negligent acts and omissions of its nurses who failed to act according to the regulations, guidelines and medical protocols of the hospital, which must require that a pregnant patient in premature labor with uterine contractions remain hospitalized and not be discharged. The nurses who treated Denise, that knew that the patient had moderate contractions during the day she was discharged and knew that the day before she had a vaginal bleeding, did not inform Dr. Berrios and/or the competent authorities of HIMA that the patient was programmed to be discharged that day, with the purpose of avoid that Denise be discharged with contractions of premature labor. The nurses failed to do everything they could to notified this to HIMA's administration and prevent that Denise's discharged since she was having contractions of premature labor.

c.     HIMA is direct, vicarious, joint and severally responsible for the negligent acts and omissions of co-defendant pediatricians and neonatologists and personnel who treated the babies at NICU and caused their deaths. Both babies had respiratory insufficiency confirmed by X-rays

and arterial gases tests that reflected that both had hyaline membrane. Even knowing of these conditions, the babies were not administered Survanta, to help the lungs mature, at the time of birth. They were not intubated on time even though the results of the tests showed respiratory insufficiency and metabolic acidosis. A premature baby of 28 weeks of gestation today has a 90% probability of surviving without hindrance.

d.     Co-defendants did not obtain an informed consent from the patient for the medical treatment offered or not offered. Co-defendants failed to explain to Denise the reasonable risks and consequences of the medical treatment offered or nor offered and of the prescriptions ordered and administered.

e.     Co-defendants discharged Denise on May 1, 2012 against her wishes, against the medical protocols that state that a pregnant patient in premature labor with uterine contractions must be maintained under medical observation and cannot be discharged. Co-defendants failed to explain to Denise the risk that her uterus could continue to dilate forcing the premature labor and making it imminent and its possible consequences like those that occur in this case.

f.     Co-defendant physicians and nurses were delayed in administering surfactant to both babies which resulted in progression of RDS/HMD and the failure to administer additional doses of surfactant lead to ongoing and worsening RDS/HMD.

g.     Regarding Baby 1:

i. High ventilator pressures plus high concentration of oxygen lead to lung damage, alveolar rupture, pulmonary interstitial emphysema (PIE) and pneumothoraxes.

ii. Inadequate treatment for PDA and excess fluids compounded Baby 1's lungs problems.

iii. Nursing failures lead to prolonged hyperthermia which negatively affected endogenous surfactant production.

iv. Physician's failures lead to persistent hypotension for many hours.

v. Fluid resuscitation for his initially low blood pressure was not done, which contributed to Baby 1's IVS/SHE

vi. High frequency oscillator ventilation was not implemented in a timely fashion at the onset of PIE, resulting in severe air leaks and was unsuccessful when it was finally used

vii. Inappropriate use of IV albumen contributed to excess intravascular volume without increasing oxygen carrying capacity contributed to the development of hyponatremia.

h. Regarding Baby 2:

i. Inappropriate use of IV albumen contributed to excess intravascular volume without increasing oxygen carrying capacity contributed to pulmonary hemorrhage.

## DAMAGES

43. The proximate cause of the death of Baby 1 and Baby 2 and the damages suffered by Plaintiffs is the combined negligence of all co-defendants, who are joint and severally liable. Co-defendants offered Denise and her babies a medical treatment below the medical standards established by the medical community.

44. Said negligence caused the following damages:

a. Due to the flagrant violations and deviations from the standard of medicine Baby 1 and Baby 2 died. The damages caused by their deaths are estimated in no less than one million dollars ($1,000,000.00) for each Plaintiff.

b. The agony, pain and suffering of Baby 1 and Baby 2 is inherited by their parents, Plaintiffs, and are estimated in no less than one million dollars ($1,000,000.00) for each Plaintiff.

c. The death of the babies and the loss of affection and companionship suffered by Plaintiffs caused and continue to cause grave damages and mental anguish. This due, only and exclusively, to the negligence in the medical treatment provided to Denise and to each of the babies while at NICU. These damages are estimated in no less than one million dollars ($1,000,000.00) to each Plaintiff.

45. Due to the negligence of all co-defendants, Plaintiffs have suffered the loss of their sons and have suffered grave anguish and emotional damages, estimated in no less than one million dollars ($1,000,000.00) to each Plaintiff.

**WHEREFORE**, it is respectfully requested from this Honorable Court to grant all allegations in this complaint for Plaintiffs and against defendants with the imposition of costs, treble damages, interest and a reasonable amount of attorney's fees.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this _6_ day of March, 2018.

> **PEDRO F. SOLER-MUÑIZ**
> *Attorneys for Plaintiff*
> 1357 Ashford Avenue, PMB 106
> San Juan, PR 00907
> Tel. 787-774-6522; Fax. 787-706-8680
>
> Pedro F. Soler Muñiz
> USDC/PR NO. 212,909
> psoler@pedrosolerlaw.com